IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| UNIVERSAL TURBINE PARTS, INC., ) ) | |
| Plaintiff, ) ) | |
| WHITNEY NATIONAL BANK, ) ) | |
| Plaintiff-Intervenor, ) ) | CIVIL ACTION NO. |
| v. ) ) | 2:08cv975-MHT (WO) |
| PUTNAM COUNTY NATIONAL BANK, ) ) ) | |
| Defendant. ) | |

OPINION AND ORDER

Plaintiffs Universal Turbine Parts and Whitney National Bank brought this lawsuit against Putnam County National Bank charging that Putnam committed conversion and trespass to chattels when it refused to surrender possession of two aircraft engines that Universal claims to own. Universal also seeks a declaratory judgment that it is the rightful owner of these engines and a permanent

1

injunction ordering Putnam to surrender possession of the engines. Universal asserts subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the plaintiffs and defendant and the amount in controversy exceeds $ 75,000.

This lawsuit is now before the court on Putnam's motion to dismiss and alternative motion to transfer. For the reasons that follow, the alternative motion to transfer will be granted.

## I. BACKGROUND

In July 2008, Putnam, a New York company, repossessed two airplanes from Vintage Jets, a Florida company. Vintage had apparently used these airplanes as collateral for a loan it received from Putnam. When Vintage defaulted on the loan, Putnam repossessed the planes in Florida and flew them back to New York, where they remain.

2

Universal, an Alabama company, claims to be the registered owner of the two engines on the repossessed airplanes.  Upon learning that these airplanes (and thus the two engines) had been repossessed, Universal immediately contacted Putnam, sending a "Bill of Sale" allegedly demonstrating that Universal rightfully owned the engines.

Over the following weeks, Universal and Putnam discussed the engines on a number of occasions. Universal initially helped Putnam in its attempts to market and sell the aircraft and engines, but after several months nothing had come of their efforts.  Universal now has a potential buyer for the engines and informed Putnam that it would either need to come up with a plan to sell the aircraft or Universal would have to come to New York and remove its engines from the aircraft in order to sell them on its own.

While the above exchanges were taking place, Vintage Jets declared bankruptcy in the Middle District of

Florida.  Universal and Putnam were parties to the bankruptcy case.  On December 10, 2008, the bankruptcy court granted Putnam's motion for relief from the automatic stay; the motion allowed Putnam and Universal to pursue "in rem" remedies as to the aircraft and the engines.

That same day, December 10, Universal filed a lawsuit against Putnam in this court, asserting trespass to chattels and conversion and seeking declaratory judgment and a preliminary injunction.

On December 22, Putnam filed an "in rem" action in a New York state court to determine the priority of the security interests in the aircraft and engines. Universal and Vintage were named as parties in the New York case. On February 3, Universal removed the New York case from state to federal court.

## II. MOTION-TO-TRANSFER STANDARD

28 U.S.C. § 1404(a) authorizes a district court to transfer a civil action to any other district in which it might have been brought "for the convenience of parties and witnesses, in the interest of justice." Because federal courts normally accord deference to a plaintiff's choice of forum, the burden is on the movant to show that the suggested forum is more convenient or that transferring litigation there would serve the interest of justice. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (per curiam). The district court has "broad discretion in weighing the conflicting arguments as to venue," England v. ITT Thompson Industries, Inc., 856 F.2d 1518, 1520 (11th Cir. 1988); the cour must engage in an "individualized, case-by-case consideration of convenience and fairness." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). A district court may properly transfer a case to "the forum in which judicial resources could most efficiently be utilized and

the place in which the trial would be easiest, and most expeditious and inexpensive." C.M.B. Foods, Inc. v. Corral of Middle Ga., 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005) (Thompson, J.).

### III. DISCUSSION

Resolution of a § 1404(a) motion requires a two-step process.  First, the court must determine whether the action could "originally have been brought in the proposed transferee district court," Folkes v. Haley, 64 F. Supp. 2d 1152, 1155 (M.D. Ala. 1999) (DeMent, J.). Then, the court must determine whether the action should be transferred "for the convenience of the parties [and] in the interest of justice." Id.

### A. Propriety of Transferee District

On a § 1404(a) motion, the court first must ask whether the proposed transferee district, the Southern District of New York, is a district where the action

originally "might have been brought." Pursuant to 28 U.S.C. § 1391(a), venue is proper "(1) in a judicial district where any defendant resides, if all the defendants reside in the same State." Putnam is the only defendant and is a citizen of New York with its headquarters in the Southern District of New York. The Southern District of New York is therefore an appropriate transferee district.[1]

## B. Balance of Justice and Convenience

The court must next consider whether the balance of justice and convenience favors transfer. When making this determination, courts "generally consider the following factors: the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses; the relative ease of access to sources of

---

1. Universal argues that venue is not proper in New York because it is not subject to personal jurisdiction there. This argument misunderstands the personal jurisdiction inquiry, which analyzes whether a defendant, not a plaintiff, may be hailed into court in a particular jurisdiction.

7

proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency." Lasalle Bank N.A. v. Mobile Hotel Properties, LLC, 274 F. Supp. 2d 1293, 1301 (S.D. Ala. 2003) (Granade, J.) (quoting Holmes v. Freightliener, LLC, 237 F. Supp. 2d 690, 692 (M.D. Ala. 2002) (Albritton, J.).  In addition, "an important consideration in deciding appropriate venue is whether a forum can meet the personal jurisdiction and venue requirements for most or all of the defendants." Home Ins. Co. v. Thomas Indus., Inc., 896 F.2d 1352, 1358 (11th Cir. 1990) (internal quotations omitted).

   This court recognizes that Universal is located in the Middle District of Alabama, and, accordingly, affords great deference to its choice to litigate this matter here.  The court also recognizes that many of the witnesses and documents relevant to this litigation are located in the Middle District of Alabama and that

Whitney, a citizen of Louisiana with branches in Alabama, would also find it more convenient to litigate this matter in this court.

However, the court determines that the balance of justice and convenience weighs in favor of transferring this case to the Southern District of New York. First, substantial questions exists whether the Middle District of Alabama is, itself, an appropriate venue. Second, substantial questions exists whether this court can properly exercise personal jurisdiction over Putnam in this lawsuit. Finally, there is parallel litigation in the Southern District of New York, presenting many overlapping questions of fact and law, and transferring this case there could save significant judicial <u>and</u> private resources. The court will now explain each of these conclusions in more detail.

<u>Venue in the Middle District of Alabama</u>: Transfer to the Southern District of New York is strongly supported by the fact that the Middle District of Alabama, itself,

does not appear to be a proper venue. Pursuant to 28 U.S.C. § 1391(a) venue is proper only in:

> "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

Putnam does not reside or do business in the Middle District of Alabama; the property at issue is not situated here; and it is highly doubtful that a substantial part of the events or omissions giving rise to this case took place in the Middle District of Alabama.  The Eleventh Circuit has noted that this statute should be read restrictively.  "The statute's language is instructive: venue is proper in a judicial district in which a <u>substantial</u> part of the <u>events or omissions giving rise to the claim occurred</u>.  Only the

events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003) (internal quotations omitted) (emphasis in original). Furthermore, "the statute protects defendants, and Congress therefore 'meant to require courts to focus on relevant activities of the defendant, not the plaintiff.'" Id. at 1371-72 (quoting Woodke v. Dahme, 70 F.3d 983, 985 (8th Cir. 1995)).

In this case, the activities that directly gave rise to Universal's claims took place in Florida (where the engines were repossessed) or in New York (where they have been stored pending resolution of the competing security interests.) Any "events" that took place in Alabama, such as the signing of the lease between Universal and Vintage or the recording of the Aircraft Security Agreement with the Federal Aviation Registry, were the

11

activities of Universal and were not the sort of "events" that, according to the Eleventh Circuit, should be considered under § 1391.

The court does not expressly decide that venue is improper in the Middle District of Alabama; it only notes that venue here is dubious, suggesting that transfer to the Southern District of New York, where venue is clearly proper, would serve the interests of justice.

Personal Jurisdiction in the Middle District of Alabama: As previously noted, Putnam has filed a motion to dismiss this case, arguing, among other things, that this court lacks personal jurisdiction over it. Universal concedes that Putnam has not had sufficient contacts with the State of Alabama to give rise to 'general jurisdiction' here. Instead, Universal argues that Putnam is subject to 'specific jurisdiction' in this case based on Calder v. Jones, 465 U.S. 783 (1984), and Alfa Corp v. Alfagres, S.A., 385 F. Supp. 2d 1230 (M.D. Ala. 2008) (Thompson, J.), because it committed

12

intentional torts (namely, conversion and trespass to chattel) which had "effects" in the Middle District of Alabama.

Universal's argument, however, does not fit neatly into the Eleventh Circuits jurisprudence and has been contested vigorously by Putnam.  Whether or not Universal is correct, the court notes only that personal jurisdiction in this case is not clear and that transfer of this case to the Southern District of New York, where personal jurisdiction over Putnam is clear, obviates the need for this court to "expend ... judicial resources in further addressing an issue collateral to the merits of the underlying dispute and which could be challenged on appeal."  Fort Knox Music, Inc. v. Baptiste, 139 F. Supp. 2d 505, 512 (S.D.N.Y. 2001) (Sprizzo, J.).

Related Litigation in the Southern District of New York:  Finally, transferring this case to the Southern District of New York would permit it to be consolidated with the highly related action already pending in that

court. This would not only save valuable judicial resources but would also save considerable private resources, as the parties would no longer be forced to simultaneously litigate overlapping cases in distant fora. See <u>Sprint Communications Co., L.P. v. APCC Services, Inc.</u> 128 S. Ct. 2531, 2545 (2008) (noting that § 1404 "mak[es] it possible for related cases pending in different federal courts to be transferred and consolidated in one district court.") (citing D. Herr, Annotated Manual for Complex Litigation § 20.12, p. 279 (4th ed. 2007)); <u>see also</u>, <u>Continental Grain Co. v. The FBL-585</u>, 364 U.S. 19, 26 (1960) (determining that, "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").[2]

---

2. Universal argues that its choice of forum should be given even greater deference because of the "first-filed rule," which states that "where two actions involving overlapping issues and parties are pending in federal courts, there is a strong presumption across the
(continued...)

\*\*\*

For the foregoing reasons, it is the ORDER, JUDGMENT, and DECREE of the court that defendant Putnam County National Bank's motion to transfer venue (doc. no. 32) is granted and this lawsuit is transferred in its entirety to the United States District Court for the Southern District of New York.

Any other pending motion is left for resolution after transfer.

---

(...continued)
federal circuits that favors the forum of the first-filed suit ...."  Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005).  The court notes, however, that there are compelling circumstances suggesting the first-filed rule should be given little weight in this case.  Namely, Universal was able to win the race to the courthouse only because it did not wait ten days, as required by Federal Rule of Bankruptcy Procedure 4001(a)(1), to file an action after the lifting of the automatic stay in the related bankruptcy case.  Instead, Universal filed its complaint on December 10, 2008, the day the stay was lifted.  Putnam, on the other hand, waited ten days and filed its case immediately thereafter, on December 22.

**The clerk of the court is DIRECTED to take appropriate steps to effect the transfer.**

**DONE, this the 14th day of May, 2009.**

             /s/ Myron H. Thompson
        **UNITED STATES DISTRICT JUDGE**